UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Maria Doris Pineda,** | ) | |
| no current address; | ) | |
| | ) | |
| **Maria Doris Pineda,** | ) | |
| on behalf of her minor child D.R. | ) | |
| no current address; | ) | |
| | ) | |
| **Jasmine Ortega Sanchez**, | ) | |
| no current address; | ) | |
| | ) | |
| **Jasmine Ortega Sanchez**, | ) | |
| on behalf of her minor child M.O.R. | ) | |
| no current address; | ) | Case No. |
| | ) | |
| **Francisco Javier Castillos**, | ) | |
| no current address, | ) | |
| | ) | |
| **Holivia Adeline Castillos**, | ) | |
| no current address; | ) | |
| | ) | |
| **Francisco Javier Castillos**, | ) | |
| on behalf of his minor child F.J.C. | ) | |
| no current address; | ) | |
| | ) | |
| **Holivia Adeline Castillos**, | ) | |
| on behalf of her minor child F.J.C. | ) | |
| no current address; | ) | |
| | ) | |
| **Dina Ruc**, | ) | |
| no current address; | ) | |
| | ) | |
| **Dina Ruc**, | ) | |
| on behalf of her minor child J.S. | ) | |
| no current address; | ) | |
| | ) | |
| **Marta Lopez**, | ) | |
| no current address; | ) | |

1

**Marta Lopez**,
on behalf of her minor child L.D.L.
no current address;

 Plaintiffs,

v.

**Donald J. Trump**,
President of the United States of America,
in his official capacity,
1600 Pennsylvania Ave, N.W.,
Washington, D.C.;

**U.S. Immigration and Customs
Enforcement ("ICE")**
500 12th St., SW
Washington, D.C. 20536;

**U.S. Department of
Homeland Security ("DHS")**
245 Murray Lane, SW
Washington, D.C. 20528;

**U.S. Customs and Border
Protection ("CBP")**
1300 Pennsylvania Ave., NW
Washington, D.C. 20229;

**U.S. Citizenship and Immigration
Services ("USCIS")**
20 Massachusetts Ave, NW
Washington, D.C. 20529;

**Thomas Homan**, in his official capacity as
Acting Director of ICE
500 12th St., SW
Washington, D.C. 20536;

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

JURY TRIAL DEMANDED

**Jefferson Beauregard Sessions III**, in his )
individual capacity and in his official )
capacity as Attorney General of the )
United States )
950 Pennsylvania Ave, NW )
Washington, C.C. 20530; )
                                   )
**Kirstjen Nielsen**, in her official capacity as )
Secretary of U.S. Department of Homeland )
Security ("DHS") )
245 Murray Lane, SW )
Washington, D.C. 20528; )
                                   )
**Kevin K. McAleenan**, in his official )
capacity as Acting Commissioner of U.S. )
Customs and Border Protection ("CBP") )
1300 Pennsylvania Ave., NW )
Washington, D.C. 20229; )
                                   )
and )
                                   )
**L. Francis Cissna**, in his official capacity as )
Director of USCIS )
20 Massachusetts Ave, NW )
Washington, D.C. 20529, )
                                   )
                                   )
       Defendants. )

## CLASS COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NOW COMES Plaintiffs Maria Doris Pineda, Jasmine Ortega Sanchez,

Francisco Javier Castillos, Holivia Adeline Castillos, Dina Ruc, and Marta Lopez,

and file this civil action against the Trump administration for violations of their

procedural and substantive due process rights under the Fifth Amendment of the

U.S. Constitution, violation of the APA, and for class relief pursuant to Rule 23, Fed. R. Civ. P. In support thereof, Plaintiffs state that:

## **INTRODUCTION**

1.

Trump's professed and enacted policy towards thousands of caravanners seeking asylum in the United States is shockingly unconstitutional. President Trump continues to abuse the law, including constitutional rights, to deter Central Americans from exercising their lawful right to seek asylum in the United States, and the fact that innocent children are involved matters none to President Trump. For example, the Flores Agreement, a legally binding agreement designed to ensure the safety of immigrant alien children, as they enter this country for a variety of reasons, states that minors must be held in facilities run by *licensed* programs that are "safe and sanitary and are consistent with [Defendants'] concern for the particular vulnerability of minors." (See Ex. 1, ¶¶ 12.A, 14, Flores Agreement.) These facilities must "provide access to toilets and sinks, drinking water … **adequate temperature control and ventilation**, adequate supervision to protect minors from others, and contact with family." (See Ex. 1)

2.

Despite the Flores Agreement's lawfully binding mandates, President

Trump's policy position/initiative is to put these very children in tents, touting

that "when they find out this happens, [held in tents for years in the desert]

you're going to have far fewer people come up." Clearly President Trump cannot

believe that his tents are facilities run by licensed programs as required by the

Flores Agreements. And President Trump clearly is not talking about adequate

temperature controlled and ventilated tents with toilets and sinks and drinking

water, for Plaintiffs' children, noting that Trump has condoned tent

encampments as recent as 8 months ago. Id. Moreover, the issue of detaining

people in tents indefinitely brings about more unconstitutional conduct by our

President.

3.

The only way President Trump can mandate permanent detention without

even a bond hearing is for those persons to be designated as "you are an arriving

alien" upon entering the United States. See Garza-Garcia v. Moore, 539 F. Supp.

2d 899, 906 (S.D. Tex. 2007). There are two other designation: (2) "You are an

alien present in the United States who has not been admitted or paroled."; or (3)

"You have been admitted to the United States, but are removable for the reasons

stated below." See United States v. Castaneda-Barajas, No. CR-11-2069-RMP,

2011 WL 3626786, at *6 (E.D. Wash. Aug. 16, 2011). These two designations, however, permit asylum seekers to have a bond hearing. So, taking President Trump at his word—that his policy position/initiative is to detain people in tents until they have to go back to central America—President Trump must be directing officials to designate all Caravanners as "you are an arriving alien." <u>Id</u>. The problem with this designation however is that the law requires Defendants to permit all such designated persons to *challenge their designations*; consequently, Trump's policy of keeping all persons detained until they must leave the country necessarily violates due process rights. See <u>Garza-Garcia</u>, 539 F. Supp. 2d 899.

4.

On top of the above, Trump has repeatedly professed that the caravan people will not get into this county, and just as significant, Trump has taken meaningful steps to ensure the world that this is his policy position/initiative, meaningful steps such as deploying thousands of active military troops to the border, waiting on caravan persons to arrive. The legal problem with Trump's plan to stop caravan persons from entering this country is that Plaintiffs are seeking asylum, and Trump simply cannot stop them from legally doing so by using military, or anyone.

5.

This Court should also note that President Trump has begun hysterically asserting without any evidence that "many criminals" and "many gang members" are in this "onslaught" of migration. In an effort to create fear and hysteria, Trump has gone so far as to call this "an invasion of our Country." Despite these statements and actions, Trump has been unable to produce any evidence of criminals and gang members within the caravan, which has largely proceeded peacefully on its journey. Plaintiffs now request that this Court declare Trump's policy positions/initiatives outlined in this Complaint unconstitutional, to end this case and controversy.

## JURISDICTION

6.

This case arises under the Fifth Amendment to the United States Constitution, the Administrative Procedures Act (APA), and the Declaratory Judgment Act, *inter alia*. The court has subject matter jurisdiction under 28 U.S.C. § 1331.

7.

Personal Jurisdiction is proper because Defendants transact business in this District and thus are subject to personal jurisdiction in this Court.

## VENUE

### 8.

Venue is proper under 28 U.S.C. § 1391 because at least one of the Defendants is subject to personal jurisdiction in this district with regards to this action.

## PARTIES

### 9.

Plaintiff Maria Doris Pineda is a citizen of Honduras travelling by foot to the United States to seek asylum. She is the mother of "D.R."

### 10.

Plaintiff Jasmine Ortega Sanchez is a citizen of Honduras travelling by foot to the United States to seek asylum. She is the mother of "M.O.R."

### 11.

Plaintiff Francisco Javier Castillos is a citizen of Honduras travelling by foot to the United States to seek asylum. He is the father of "F.J.C."

### 12.

Plaintiff Holivia Adeline Castillos is a citizen of Honduras travelling by foot to the United States to seek asylum. She is the mother of "F.J.C."

13.

Plaintiff Dina Ruc is a citizen of Honduras travelling by foot to the United

States to seek asylum. She is the mother of "J.S."

14.

Plaintiff Marta Lopez is a citizen of Honduras travelling by foot to the

United States to seek asylum. She is the mother of "L.D.L."

15.

Defendant Donald J. Trump is the President of the United States and is

responsible for the direction and control of all federal executive agencies,

including all Co-Defendants. Trump is the driving force behind the policies and

actions challenged in this suit.

16.

Defendant U.S. Immigration and Customs Enforcement ("ICE") is the sub-

agency of DHS that is responsible for carrying out removal orders and

overseeing immigration detention.

17.

Defendants U.S. Department of Homeland Security ("DHS") has

responsibility for enforcing the immigration laws of the United States.

18.

Defendant U.S. Customs and Border Protection ("CBP") is the sub-agency of DHS that is responsible for the initial processing and detention of noncitizens who are apprehended near the U.S. border.

19.

Defendant U.S. Citizenship and Immigration Services ("USCIS") is the sub-agency of DHS that, through its Asylum Officers, conducts interviews of certain individuals apprehended at the border to determine whether they have a credible fear of persecution and should be permitted to apply for asylum.

20.

Defendant U.S. Department of Health and Human Services ("HHS") is a department of the executive branch of the U.S. government which has been delegated with authority over "unaccompanied" noncitizen children.

21.

Defendant Thomas Homan is sued in his official capacity as the Director of ICE.

22.

Defendant Kirstjen Nielsen, is sued in official capacity as the Secretary of the Department of Homeland Security. In this capacity, she directs each of the component agencies within DHS: ICE, USCIS, and CBP. As a result, Defendant

Nielsen has responsibility for the administration of the immigration laws

pursuant to 8 U.S.C. § 1103, is empowered to grant asylum or other relief.

23.

Defendant Jefferson Beauregard Sessions III is sued in his individual

capacity and his official capacity as the Attorney General of the United States. At

all times relevant to this Complaint, he had responsibility for the administration

of the immigration laws pursuant to 8 U.S.C. § 1103, oversaw the Executive

Office of Immigration Review, was empowered to grant asylum or other relief.

At all times relevant to this Complaint, he had the power to direct his

subordinates to carry out any order relating to asylum petitions and detention.

24.

Defendant L. Francis Cissna is sued in his official capacity as the Director

of USCIS.

25.

Defendant Kevin K. McAleenan is sued in his official capacity as the

Acting Commissioner of CBP.

## SOME RELEVANT LAWS AT ISSUE IN THIS CASE

26.

The care and custody of minors in Immigration Custody is controlled by

the Flores Agreement, a copy of which is attached hereto as Exhibit 1. That

agreement applies to all minors, including those who are taken into custody with their parents. <u>Flores v. Lynch</u>, 828 F.3d 898 (9th Cir. 2016). That agreement provides that minors must be held in facilities run by licensed programs and that are "safe and sanitary and are consistent with [Defendants'] concern for the particular vulnerability of minors." Ex. 1, ¶¶ 12.A, 14. These facilities must "provide access to toilets and sinks, drinking water … **adequate temperature control and ventilation**, adequate supervision to protect minors from others, and contact with family." <u>Id.</u>

27.

Any immigrant present in the U.S., irrespective of whether they immigrated through a designated port of arrival, must be considered an applicant for admission into the country:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225 (a)(1).

28.

Immigrants who indicate an intention to apply for asylum or indicates a fear of persecution must be referred for a "credible fear interview":

If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title and the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer under subparagraph (B).

8 U.S.C. § 1225 (b)(1)(A)(ii).

29.

Following a credible fear interview, if an asylum officer determines that an

asylum seeker has a "credible fear of persecution," then there is a significant

possibility that the asylum seeker will be granted asylum:

For purposes of this subparagraph, the term "credible fear of persecution" means that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 1158 of this title.

8 U.S.C. § 1225 (b)(1)(B)(v).

## **RELEVANT FACTS**

### a.  **Facts Relevant to Tent City**

30.

The Northern Triangle countries of Guatemala, Honduras, and El Salvador

are undergoing a well-documented human rights crisis.[1] As a result, thousands

---

[1] See, e.g., Diego Zavala, Fleeing for Our Lives: Central American Migrant Crisis, AMNESTY USA (Apr. 1, 2016, 12:12 PM),

of immigrants have begun a journey to the United States, many children and

families, in order to seek asylum.

31.

In an interview with Laura Ingraham, Trump addressed the question of

those immigrants in this group seeking asylum. Specifically stating "we are

going to hold them until such time as their trial takes place."

32.

In that interview, Trump further stated that "we're going to put up, we're

going to build tent cities, we're going to put tents up all over the place" to house

caravanners.

33.

There is no evidence that Trump's policy position/initiative of placing

people in tents and tent cities is in compliance with the requirement that alien

children such as those at issue in this case are being placed in facilities run by

licensed programs that provide adequate temperature control and ventilation,

access to drinking water, and supervision as required by the Flores Agreement.

Ex. 1.

---

http://blog.amnestyusa.org/americas/fleeing-for-our-lives-central-american-
migrant-crisis/; Lily Folkerts, A Look at the Northern Triangle of Central
America in 2016: Sustained Violence and Displacement, LATIN AMERICA
WORKING GROUP (Aug. 15, 2016) http://www.lawg.org/action-center/lawg-
blog/69-general/1709-a-look-at-thenorthern-triangle-of-central-america-in-2016-
sustained-violence-and-displacement.

34.

Trump followed this up with "we're going to take the people and they're going to wait … when they find out this happens, you're going to have far fewer people come up." This demonstrates that Trump is compounding violations of the Flores Agreement by again attempting to use immigration detention as a deterrent to migration, again flouting this Court's ruling that this is unlawful. R.I.L-R v. Johnson, 80 F.Supp.3d 164, 188 (D.D.C. 2015) (citing Kansas v. Crane, 534 U.S. 407, 412, 122 S.Ct. 867, 151 L.E.2d 856 (2002)).

**b. Facts Related to Denial of Access to Asylum**

35.

At the same time that Trump is stating that he is going to detain all Central American asylum seekers, he is saying it doesn't matter, "those in the Caravan, turnaround, we are not letting people into the United States illegally. Go back to your Country."

36.

As stated by Defendant Nielsen (Secretary of DHS), "This caravan cannot come to the United States. They will not be allowed in. They will not be allowed to stay." "If you do not have a legal right to come to this country and you come as part of this caravan, you come in our country, you will be returned home." Id.

37.

To further enact Trump's policy position/initiative of stopping

caravanners, including asylum seekers, from entering the United States,

Defendants are sending more than 5,000 active duty troops to the Southern

Border to join Customs and Border Patrol and the National Guard already

present there. At least some number of these troops will be armed.

38.

Defendant Nielsen has already admitted that these troops, and CBP

agents, cannot enter Mexico to prevent the immigrants from entering the U.S. to

seek asylum.

39.

Any immigrant, even one deemed inadmissible under §§ 1182(a)(6)(C) or

1182(a)(7), who indicates an intention to apply for asylum or a fear of

persecution, shall be referred to an asylum officer. 8 U.S.C. § 1225 (b)(1)(A)(ii).

Thus, the Defendants are attempting to deprive these migrants of their statutory

right to seek asylum, and utilizing the U.S. military against desperate, unarmed,

women and children to do it. Id.

40.

As late as October 31, 2018, Mr. Trump has re-stated his policy position, stating he is now prepared to deploy as many as 15,000 troops, stating "[w]e're going to be prepared. They are not coming into our country."

**c. Relevant Facts to the Denial of Due Process**

41.

The Defendants have stated that their policy is to detain all migrants and caravanners, including asylum seekers indefinitely, without any bond hearing.

42.

All immigrants in the custody of the Defendants are issued a notice to appear by the CBP officer initially reviewing their case. Garza-Garcia v. Moore, 539 F.Supp.2d 899, 907 (S.D. Tex. 2007). In issuing this document, the officer selects from three categories, the first of which is "arriving alien" that subjects the immigrant to mandatory detention. Id.

43.

Upon information and belief, it is by use of this designation that the Defendants intend to enforce this mandatory detention. Specifically, upon information and belief, the Defendants have issued an informal directive to all CBP officers to select "arriving alien" for all of the Plaintiffs to subject them to mandatory detention. In Kim, the Supreme Court acknowledged that § 1226

includes the right to a hearing to determine if the immigrant is properly included in the mandatory detention category, which provides the individual review sufficient to satisfy constitutional requirements. <u>Denmore v. Kim</u>, 538 U.S. 510, 514, 123 S.Ct. 708, 155 L.Ed.2d 724. This determination has been interpreted as giving all detainees the right to review their inclusion in the class of immigrants subject to mandatory detention. <u>Moore</u>, 539F.Supp.3d at 907-08.

44.

Further, asylum-seekers can be provided bond and released into the United States temporarily at the discretion of the Attorney General. 8 U.S.C. § 1182(d)(5)(A). ICE has issued a directive setting forth the procedures that must be utilized when evaluating parole requests. ICE Directive No. 11002.1: <u>Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture</u> (Dec. 8, 2009). This directive requires that '[e]ach alien's eligibility for parole should be considered and analyzed on its own merits and based on the facts of the individual aliens case." <u>Id.</u> at ¶ 6.2. Further, when such immigrants who establish they are not a flight risk or danger to the community, "DRO should … parole the alien on the basis that his or her continued detention is not in the public interest." <u>Id.</u>

45.

Trump's policy position/initiative of detaining caravanners, including

Asylum seekers, until they are deported back to Central America prohibits those

seeking Asylum from challenging their inclusion within the category of aliens

that must be mandatorily detained as described in the immediate two above

paragraphs.

## CLASS ACTION ALLEGATIONS

46.

Plaintiffs bring this suit as a class action on behalf of themselves and all

others similarly-situated (the "Class") pursuant to Rules 23(a), 23(b)(2), and

23(b)(3).

### i.    **Class Definition**

47.

Plaintiffs seek to represent the following class:

**All persons (1) who are Mexican, Central American, or South American citizens (2) who are travelling to the United States or have attempted entry into the United States, whether at a designated port of entry or not, since October 31, 2018, and (3) who are seeking asylum or intending to seek asylum within the United States.**

48.

Plaintiffs reserve the right to amend the class definition if further

investigation and discovery demonstrates that the class definition should be

narrowed, expanded, or otherwise modified. Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

49.

As a result of Defendants' stated policies and actions taken to support them, Plaintiffs seek declaratory and injunctive relief under Rule 23(b)(2) under pre-enforcement standing, to prevent the catastrophic and damaging effects of Defendants' illegal and unconstitutional actions, policies, and practices.

**ii.** **Rule 23(a) requirements are met for the proposed Class**

50.

The requirements of Rule 23(a) are satisfied by this class action.

**a. Numerosity**

51.

The information as to the size of the Class and the identity of Class Members is in the control of the Defendants. On information and belief, the class encompasses at least 3,600 migrant individuals and families from Honduras and

Guatemala who are currently traveling through Mexico for the United States intending to seek asylum. The number of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

### b. Commonality

52.

Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendants complained of herein were generally applicable to the entire Class. The common answers that Plaintiffs seek are simple and will result in a common resolution for the Class. These legal and factual questions include, but are not limited to:

1. Whether housing asylum seekers, including children and families, in tent cities for the duration of their asylum case is permissible under the Flores Agreement;

2. Whether Defendants' decision to deny asylum seekers the ability to even pursue asylum claims is constitutional;

3. Whether depriving asylum seekers of the opportunity to challenge their inclusion in the category of aliens subject to mandatory detention is constitutional;

4. Whether using long term detention of asylum seekers, including

children and families, in order to deter migration is constitutional or

lawful; and

5. Whether denying asylum seekers who pass their credible fear exam

an individualized review of their parole decision is constitutional and

lawful.

### c. Typicality

53.

Plaintiffs' claims are typical of the members of the Class because Plaintiffs

and all Class members are migrants crossing the southern U.S. border seeking

asylum who are or will be denied the opportunity to seek asylum, who are or

will be subject to mandatory immigration detention as a deterrent to migration,

who are or will be denied opportunity to seek individualized review of their

bond determination and inclusion in the class of aliens subject to mandatory

detention, and who are or will be housed in tent cities until their asylum claims

are ruled on. Plaintiffs' claims arise from the same practices and course of

conduct that give rise to the claims of the Class members and are based on the

same legal theories.

### d. Adequacy

54.

Plaintiffs will fairly and adequately protect the interests of the Class.

Plaintiffs have no interests that are contrary to or in conflict with those of the Class they seek to represent.

55.

Plaintiffs have retained competent counsel in both civil rights and class action litigation. Plaintiffs' counsel has significant recent experience in substantially similar litigation against substantially similar defendants.

56.

Plaintiffs' suit is financially supported by considerable philanthropic funding.

### iii.   Rule 23(b)(2) requirements are met for the proposed Class

57.

The requirements of Rule 23(b)(2) are satisfied by this class action.

58.

Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Class would be proper. Based on the anterior facts preceding this paragraph, Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to Class members as a whole and certification of the Class under Rule 23(b)(2) proper.

### iv.     Rule 23(b)(3) requirements are met for the proposed Class

59.

The requirements of Rule 23(b)(3) are satisfied by this class action.

60.

Questions of law or fact common to Class members predominate over any questions affecting only individual members because, *inter alia*, (i) each member of the proposed Class was injured by the same Defendants under the same subject policies, (ii) each member of the proposed Class was or will be denied opportunity to seek asylum, (iii) each member of the proposed Class was or will be determined to be an 'arriving alien' subject to mandatory detention without a hearing to challenge that inclusion, (iv) each member of the proposed Class was or will be denied an individualized review of their bond application pending their asylum claims, (v) each member of the proposed Class was or will be detained in tents in an effort to deter migration, and (vi) and each member of the proposed class will be detained in tent cities in violation of the Flores Agreement.

61.

A class action is superior to other available methods for fairly and efficiently adjudicating the controversy because the certification of the Class will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly injured, without sacrificing procedural fairness

or bringing about other undesirable results, making certification of the Class

under Rule 23(b)(3) proper.

## CAUSES OF ACTION

### COUNT I
### Claim for Declaratory Relief
### under the Declaratory Judgment Act, 28 U.S.C. § 2201
### due to violating Due Process Clause
### 5th Amendment of the U.S. Constitution
*(Claim for Declaratory relief against all Defendants in their official capacities)*

62.

Plaintiffs hereby incorporate the preceding factual paragraphs 1 through

61, and any other paragraph this Court deems relevant, as repeated and

realleged as though fully set forth herein to support this Count.

63.

The Due Process Clause of the Fifth Amendment applies to all "persons"

on United States soil and thus applies to Plaintiffs when seeking admission at the

Southern United States Border.

64.

Plaintiffs have a liberty interest under the Due Process Clause in being free

from unwarranted government detention.

65.

Although the U.S. Supreme Court acknowledges the "broad" latitude due

the Executive in the realm of immigration, <u>Mathews v. Diaz</u>, 426 U.S. 67, 79–80,

96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), it cannot "abdicat[e]" its "legal responsibility to review the lawfulness" of detention. <u>Zadvydas</u>, 533 U.S. at 700, 121 S.Ct. 2491. The government's power over immigration, while considerable, "is subject to important constitutional limitations." <u>Id</u>. at 695, 121 S.Ct. 2491.

66.

Previous attempts by the federal government to use a policy of "no release" to deter asylum seekers have been found to violate due process. In <u>R.I.L. v. Johnson</u>, the federal government argued that "in determining whether an individual claiming asylum should be released, ICE can consider the effect of release on others not present in the United States. Put another way, it maintain[ed] that one particular individual may be civilly detained for the sake of sending a message of deterrence to other Central American individuals who may be considering immigration." <u>R.I.L-R v. Johnson</u>, 80 F. Supp. 3d 164, 188–89 (D.D.C. 2015). The Johnson court found that the government's consideration of the deterrence effect on whether to release asylum-seekers was "out of line with analogous Supreme Court decisions," noting that in discussing civil commitment more broadly, the Court has declared such "general deterrence" justifications impermissible. <u>Id</u>. (citing <u>Kansas v. Crane</u>, 534 U.S. 407, 412, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002) (warning that civil detention may not "become a 'mechanism for retribution or *general deterrence*' —functions properly those of criminal law,

not civil commitment") (quoting <u>Kansas v. Hendricks</u>, 521 U.S. 346, 372–74, 117

S.Ct. 2072, 138 L.Ed.2d 501 (1997) (Kennedy, J., concurring); <u>see id</u>. at 373, 117

S.Ct. 2072 ("[W]hile incapacitation is a goal common to both the criminal and

civil systems of confinement, retribution and general deterrence are reserved for

the criminal system alone.")). The Johnson court further found that "a general-

deterrence rationale seems less applicable where—unlike pedophiles, *<u>see</u>*

<u>Hendricks</u>, 521 U.S. at 354–55, 362, 117 S.Ct. 2072, or other violent sexual

offenders, <u>see</u> <u>Crane</u>, 534 U.S. at 409–11, 122 S.Ct. at 869—neither those being

detained nor those being deterred are certain wrongdoers, ***but rather individuals***

***who may have legitimate claims to asylum in this country***." <u>R.I.L-R v. Johnson</u>,

80 F. Supp. 3d 164, 189 (D.D.C. 2015) (emphasis added).

67.

Based on the incorporated facts to support this count, the policy

position/initiative of detaining Plaintiffs in tents until they are deported without

permitting Plaintiffs to challenge their categorization in a class of aliens subject to

mandatory detention violates their substantive due process rights. Moreover,

violating their substantive due process rights for the purpose of deterring

migration is also unconstitutional.

68.

Based on the incorporated facts to support this count, furthermore, the

policy position/initiative of entirely denying all class members access to the

asylum process by stating you are not allowing any class member from even

entering the United States, violates their due process rights.

69.

Based on the incorporated facts to support this count, the policy

position/initiative of detaining children and families in tents in direct violation

of the Flores Agreement, violates the substantive due process rights of the

Plaintiffs and their minor children, for whom they are acting on behalf of.

**COUNT II**
**Claim for Declaratory Relief**
**under the Declaratory Judgment Act, 28 U.S.C. § 2201**
**for violation of Procedural Due Process Clause**
**5th Amendment of the U.S. Constitution**
*(Claim for Declaratory relief against all Defendants in their official capacities)*

70.

Plaintiffs hereby incorporate the preceding factual paragraphs 1 through

34, and any other paragraph this Court deems relevant, as repeated and

realleged as though fully set forth herein to support this Count.

71.

The Due Process Clause of the Fifth Amendment applies to all "persons" on United States soil and thus applies to Plaintiffs when seeking admission at the Southern United States Border.

72.

Plaintiffs have a liberty interest under the Due Process Clause in remaining free from unwarranted government detention.

73.

Based on the incorporated facts to support this count, the policy position/initiative that mandates the detention of Plaintiffs in tents until they must leave the country violates procedural due process because the policy position/initiative denies Plaintiffs their lawful right to challenge Plaintiffs' inclusion in a category that prohibits them from seeking bond and release from detention. This denial deprives the Plaintiffs of their procedural protections of the individualized determination of their bond eligibility.

## COUNT III
### Claim for Declaratory Relief
### for violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(C), by disregarding the requirements of, *inter alia*, 8 U.S.C. § 1225; 8 U.S.C. § 1182; 8 CFR § 1201
### ICE Directive No. 11002.1; and the Flores Agreement
*(Claim for Declaratory relief against Defendants Sessions, Nielsen, and McAleenan in their official capacities)*

74.

Plaintiffs hereby incorporate the preceding factual paragraphs 1 through 34, and any other paragraph this Court deems relevant, as repeated and realleged as though fully set forth herein to support this Count.

75.

Based on all the incorporated facts that support this count, the final agency action mandating the permanent detention of all asylum seekers in tents (or anywhere) until they are deported is an arbitrary and capricious abuse of the implementation of specific statutes that entitle Plaintiffs to challenge their categorization within a class of aliens that are not permitted bond. Further, this policy position/initiative is an arbitrary and capricious abuse of the implementation of the specific statutes permitting aliens to seek asylum. Further, the Defendants' policy position/initiative of detaining minor alien children in tents, a schematic that clearly does not meet the licensed program and other requirements of the Flores Agreement; and the tent city policy is unlawful under the APA.

## COUNT IX
### Attorney's Fees

Based on the foregoing, Plaintiffs are entitled to reasonable attorney's fees under all applicable laws, including the Equal Access to Justice Act, 28 U.S.C. § 2412.

### PRAYER FOR RELIEF

Plaintiffs request that the Court enter a judgment against Defendants and award the following relief:

A.      Enter judgment and declaratory judgment in favor of Plaintiffs;

B.      Declare all acts argued as unconstitutional within this Complaint as unconstitutional;

C.      Declare all acts argued as violative of the APA as violative of the APA;

D.      Award costs and attorneys' fees to Plaintiffs; and

E.      Order all other relief that is just and proper.

Respectfully submitted this 1st day of November 2018.

/s/John M. Shoreman
John M. Shoreman (#407626)

**MCFADDEN & SHOREMAN, LLC**
1050 Connecticut Avenue, NW
Washington, DC 20036
202-772-3188/202-204-8610 FAX
jmshoreman@verizon.net

/s/ Mario B. Williams
Mario B. Williams (Ga. # 235254)
*Pro Hac Vice Application Forthcoming*

/s/Dallas S. LePierre
Dallas S. LePierre (Fl. # 101126)
*Pro Hac Vice Application Forthcoming*

**NEXUS DERECHOS HUMANOS ATTORNEYS, INC.**
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
404-254-0442/ 703-935-2453 FAX
mwilliams@ndhlawyers.com
dlepierre@ndhlawyers.com

/s/ Julie Oinonen
Julie Oinonen (Ga. # 722018)
*Pro Hac Vice Application Forthcoming*

**WILLIAMS OINONEN LLC**
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
404-654-0288/404-592-6225 FAX
julie@goodgeorgialawyer.com

*Counsel for Plaintiffs*